**ALAMO MOTOR LINES, Inc. v. INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, LOCAL UNION NO. 657 et al.**

No. 12102.

Court of Civil Appeals of Texas.
San Antonio.

March 15, 1950.

Rehearing Denied April 12, 1950.

Maynard F. Robinson, San Antonio, for appellant.

L. N. D. Wells, Jr., Dallas, Mullinax, Wells & Ball, Dallas, Oliver & Peace, San Antonio, for appellees.

NORVELL, Justice.

Alamo Motor Lines, Inc., the plaintiff below, has appealed from an order denying its application for a temporary injunction. The appellees are referred to in the briefs as the "union defendants" and the "carrier defendants", and such designations will be used in this opinion. The union defendants are four local unions affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, A. F. L., and W. M. Miller, a representative of the International Brotherhood. Certain local unions affiliated with the Longshoremen' International Association were also named as defendants below, but it seems that no relief is sought against them upon this appeal and they will not be further noticed.

The carrier defendants are the Sunset Motor Lines, Inc., and twenty-one other motor transportation companies. In response to an order to show cause why a temporary injunction should not issue, Locals Nos. 657, 968, 583 and 941 of the Teamsters Union and W. M. Miller filed an answer contesting plaintiff's application. However, none of the carrier defendants answered.

Plaintiff operates a common carrier truck line between Houston and El Paso, Texas, and serves many intermediate points, including San Antonio, Texas. It sought to restrain the union defendants from maintaining a picket line around its terminals in San Antonio, Houston, San Angelo, Odessa, Alpine and El Paso, Texas. Plaintiff also sought to restrain the carrier defendants from refusing to accept freight from said plaintiff and from refusing to deliver freight to it.

The case came on for hearing before the court without a jury and the plaintiff agreed with the union defendants that the court's ruling on the application for temporary injunction should determine the final judgment to be rendered as between plaintiff and the answering union defendants.

After a full hearing of the evidence the trial court rendered judgment refusing the injunctive relief prayed for.

Plaintiffs submits its appeal upon three points raising two contentions, which for convenience we shall discuss in the inverse order of presentation in plaintiff's brief: First, that the maintenance of picket lines near and about plaintiff's terminals by the union defendants was unlawful (Points Two and Three), and second, that plaintiff was entitled to a temporary injunction against the carrier defendants by reason of their failure to answer plaintiff's petition after having been served with a "show cause" order (Point No. One).

Upon request the trial judge filed findings of fact and conclusions of law, and plaintiff submits no points directly challenging said findings and conclusions or asserting that the evidence does not support the findings. Consequently, our statement of the case is taken largely from the findings of the trial judge.

It appears that the disagreement between the plaintiff and the union defendants grew out of the demand made by said defendants that plaintiff adopt the "Southwestern Area Over-the-Road Agreement", which was a form of contract agreed upon by a negotiation committee of the Southwest Operators Association and a similar committee representing the Southern Conference of Teamsters. This form of contract regulates in detail the working conditions, wages and other employee benefits to be established, maintained or paid by motor carriers for and on behalf of their over-the-road truck drivers. The agreement was designed for application to all motor carriers operating in Arkansas, Oklahoma, Texas and Louisiana. The plaintiff was not a member of the Southwest Operators Association and its adoption of the "Over-the-Road Agreement" mentioned would have necessitated its paying increased wages and affording increased insurance benefits to its employees as compared with the then existing contract between plaintiff and its over-the-road drivers. According to the trial judge's findings, the four Locals who are defendants here were the recognized bargaining agents for plaintiff's truck drivers

and had negotiated a contract with plaintiff relating to wages, hours and working conditions of such employees. During the fall of 1949, the local unions gave timely notice of their intention to re-negotiate certain provisions of said contract, principally those relating to wages and insurance benefits. In November, 1949, Clyde Gherman, as agent for the local unions, met with T. W. Wheeler, president and majority stockholder of plaintiff company, and sought to induce him to accede to the unions' demands. In mid-December, a committee of agents of the union defendants also met with Wheeler, but the plaintiff refused to raise wages or provide additional insurance benefits although certain companies competing with plaintiff had done so. Thereafter a number of telephone conversations and meetings took place between the agents of the union defendants and plaintiff's president with reference to the matter, and the agents of union defendants advised plaintiff, through Wheeler, that unless plaintiff agreed to comply with their demands the union defendants would picket plaintiff's places of business in protest against plaintiff's refusal to grant wage increases and insurance benefits. Some of plaintiff's employees were satisfied with the then prevailing wages and conditions and did not desire to strike or picket, though none of them withdrew from the union defendants their authorizations to act as their collective bargaining agents. Others of plaintiff's drivers actually struck and picketed plaintiff's places of business for the sole purpose of advertising plaintiff's refusal to increase wages and provide insurance benefits. Pursuant to established union procedure, a strike was authorized by union membership vote against any employer who refused to meet the unions' demands with reference to wages and insurance benefits. No separate vote was taken limited only to the employees of plaintiff. However, prior to the strike and picketing, separate meetings of plaintiff's drivers were held at which plaintiff's drivers were advised of the strike plans, and at no meeting did any of said drivers voice objection thereto. On January 19, 1950, less than a majority of plaintiff's drivers struck and picketed in protest of plaintiff's refusal to grant the union demands. Such picketing was peaceful and unattended by threats or violence of any kind. Some persons observed the picket line and refused to do business with plaintiff, and others crossed the picket line without molestation or reprisal. (Certain other findings were made which relate primarily to the carrier defendants and will be adverted to in the latter part of this opinion.)

Based upon the findings above summarized, the trial judge made the following conclusions of law:

"1. A bona fide labor dispute exists between plaintiff and some of its employees and a bona fide labor dispute exists between plaintiff and labor defendants.

"2. In connection with such labor disputes labor defendants have exercised their constitutional rights of free speech and assembly by peaceful picketing in the public street, advising the public of the existence of such labor dispute.

"3. Defendants have not engaged in any secondary picketing or secondary boycotting or in any conspiracy in restraint of trade or any violation of the anti-trust laws or any other statutes of the State of Texas.

"4. Defendants' actions have been in all things lawful."

We first consider plaintiff's contention that the picketing of plaintiff's terminals was illegal. While, as heretofore pointed out, the findings and conclusions of the trial court are not directly attacked, it is asserted in plaintiff's brief that no valid controversy existed which would justify picketing; that the picketing was for an unlawful purpose and that the union defendants, acting as an association or as bargaining representatives of plaintiff's employees, did not "invoke the proper and necessary procedure to validate a controversy between (plaintiff and) the employees of Alamo Motor Lines or the member employees of Alamo Motor Lines which they purported to represent." It is insisted that there was no valid "labor dispute" or good faith bargaining so as to render picketing lawful, for the reason that the representatives of the union defendants were insistent

that plaintiff agree to sign and abide by the "Southwestern Area Over-the-Road Motor Freight Agreement" and refused to deviate from this demand. The trial judge's findings as to history of the bargaining negotiations are binding upon us. They are not directly attacked and are supported by the evidence. It appears that while the union representatives were insistent upon plaintiff's signing the "over-the-road agreement" which provided for an increase in wages and insurance benefits for plaintiff's employees, Wheeler was equally adamant in his position. He offered to renew the then existing contract, but refused to accept the agreement proffered by the union agents upon the stated ground that his company could not afford to pay the increased wages and benefits provided for therein. Because of this stalemate, the union defendants established picket lines at plaintiff's terminals.

Under recent opinions of the Supreme Court of this State, which follow the decisions of the Supreme Court of the United States, it appears that a "labor dispute" is disclosed by the record in this case.

In International Union of Operating Engineers, Local No. 564 v. Cox, Tex. Sup., 219 S.W.2d 787, and Construction and General Labor Union, Local No. 688 v. Stephenson, Tex.Sup., 225 S.W.2d 958, it was held, primarily upon authority of American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855, that for a "labor dispute" to exist, it is not essential that there be a disagreement between an employer and his employees. In the present case there was a "labor dispute" existing between plaintiff and various Locals of the Teamsters Union to which certain of its employees belonged, involving the proposed adoption of the "Southwestern Area Over-the-Road Motor Freight Agreement."

The purpose of the picket line was to advertise the fact that a "labor dispute" involving the plaintiff existed. International Union of Operating Engineers v. Cox, supra, citing Carlson v. State of California, 310 U.S. 106, 60 S.Ct. 746, 84 L. Ed. 1104.

In Ex parte Henry, 147 Tex. 315, 215 S.W.2d 588, our Supreme Court reviewed numerous recent decisions of the Supreme Court of the United States and pointed out that under said holdings, peaceful picketing in support of a lawful objective is not illegal, but constitutes the exercise of a right protected by the First and Fourteenth Amendments to the Constitution of the United States.

The purpose of the picket line here was to secure a lawful objective, i. e., an increase in wages and insurance benefits, and in this particular the case before us differs from that of Construction and General Labor Union Local No. 688 v. Stephenson, above cited, in which the objective sought was proscribed by a valid statute.

Likewise, the facts of this case distinguish it from North East Texas Motor Lines v. Dickson, Tex.Sup., 219 S.W.2d 795, wherein it was held that picketing was unlawful and would be restrained where no demand was made of the employer and consequently it had no knowledge of the objectives sought to be gained by the picketing union and was thus effectively deprived of an opportunity to bargain and negotiate with its employees or the union. In this case a specific and detailed demand was made of the employer by the submission to it of a proposed form of contract covering wages and conditions of employment.

Further discussion of plaintiff's contention that the picketing by the union defendants was unlawful is deemed unnecessary. The Texas Supreme Court cases above mentioned control the decision of this case. We hold that the picketing of plaintiff's terminals by the union defendants was not shown to be unlawful. Plaintiff's second and third points are overruled.

The trial judge's findings, insofar as they relate primarily to the carrier defendants, are as follows:

"Plaintiff failed to show that any of its interline carriers refused to do business with plaintiff, boycotted plaintiff, or in any wise violated any duty toward plaintiff. * * *

"Plaintiff failed to show any illegal or unlawful purpose in the placing of pickets at the places of business of plaintiff; that further there is no evidence of any threats, intimidations or coercion exerted in any attempt or effort to destroy the business of plaintiff; that there is no evidence of threats, intimidations or coercion in attempting to force the motor transportation defendants to refuse to accept freight from the plaintiff and to cease and desist from interlining and interchanging freight with plaintiff; that there is no evidence that the motor transportation defendants are threatening to discontinue their relationship and interchange transactions with plaintiff, nor that they have refused or threatened to continue to refuse to transport any freight or merchandise from the plaintiff.

"There is no evidence that the union and business agents of these defendants have entered into a conspiracy with the motor carrier defendants, or any other persons, in restraint of trade or that they have engaged in secondary boycotting in violation of the Statutes of the State of Texas."

By these findings the trial judge in effect held that plaintiff failed to support by proof the allegations upon which it relied to show that it was entitled to injunctive relief against the carrier defendants. Plaintiff argues, however, that as the carrier defendants did not file an answer to the petition in response to the "show cause" order, no proof was necessary and that it was entitled to an injunctive decree by default. We are unable to agree with this contention. The theory of the petition was that the carrier defendants had refused to carry out their obligations to plaintiff, assumed by contract or imposed by statute, Article 905, Vernon's Ann.Civ.Stats., because of agreements with the union defendants, or because of threats and coercion made and applied to the carrier defendants by said union defendants. The allegations setting up this theory were traversed by the pleadings of the union defendants and issues of fact were thus drawn for the court's determination upon the evidence.

The granting or refusing of a temporary injunction is within the sound discretion of the court, Harding v. W. L. Pearson & Co., Tex.Com.App., 48 S.W.2d 964, Bryan v. Darlington, Tex.Civ.App., 207 S.W.2d 681, and, although the union defendants only answered, the court was not required to issue an injunction against the non-answering carrier defendants, for the applicable rule is that "the court may in its discretion refuse to allow an injunction against any one of defendants on the answer of some of them, although others have failed to answer." 43 C.J.S., Injunctions, § 183, page 870.

In Norwood v. Taylor County, Tex.Civ. App., 93 S.W.2d 573, 574, the trial court heard evidence upon a sworn application for a temporary injunction. The answer to the application was insufficient in that it was not verified. The Eastland Court of Civil Appeals in its opinion said: "Conceding that appellants' petition was sufficient to authorize the issuance of the temporary injunction, nevertheless the district judge could hear oral evidence if he desired to do so, and it was not error for the judge to refuse to grant the injunction based solely upon the allegations of the petition. Harding v. W. L. Pearson & Co., Tex.Com.App., 48 S.W.2d 964, 966; 24 Tex.Jur. §§ 133, 134 and 135, p. 179 et seq.; Article 4654, R.S.1925."

Plaintiff's first point is overruled.

No reversible error being shown, the order appealed from is affirmed.

On Motion for Rehearing.

Appellant has filed a motion for rehearing which contains no specific assignments of error, but requests that this cause be dismissed and that the opinion of this Court be not published.

As a general rule a cause appealed to this Court will not be dismissed after a decision has been rendered and an opinion handed down. Boyd v. Adcock, Tex.Civ.App., 21 S.W.2d 743; Martinez v. Kildey, Tex.Civ.App., 117 S.W.2d 151; International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, Local No. 393 v. Missouri Pacific Freight Transport Co., Tex.Civ.App., on motion to dismiss, 220 S.W.2d 219 at page 254. Nothing is set forth in appellant's motion which

would warrant a departure from the general rule, and the request for a dismissal of the cause is accordingly denied.

Rule 452, Texas Rules of Civil Procedure, relating to opinions of the Courts of Civil Appeals, provides that: "Opinions of the Courts of Civil Appeals shall be as brief as practicable, and shall avoid as far as possible lengthy quotations from other decisions or texts; and where the issues involved have been clearly settled by authority or elementary principles of law, the court shall write only brief memorandum opinions. In every case where application for writ of error is unqualifiedly refused or is granted, the opinion shall be ordered published; *in other cases opinions shall be ordered not published when they present no question or application of any rule of law of interest or importance to the jurisprudence of the State."*

The opinions of the Texas Courts of Civil Appeals are no longer published officially. The Southwestern Reporter contains all of these opinions which are authorized by the Court for publication, and is generally used by the lawyers of Texas. This publication has no official connection with the State of Texas, but is edited, printed and distributed by the West Publishing Company, a private corporation.

Appellant's motion is apparently designed to secure a request from this Court to the West Publishing Company that the opinion in this case be not published by them. These requests are uniformly complied with by such publisher and when we believe that an opinion falls within the provisions of the rule, we recommend that it be not published. However, the opinions of this Court are public records and anyone who desires to do so may make or secure copies thereof. This Court could hardly prohibit subsequent publication thereof by any newspaper, publishing firm or individual desiring to disseminate information relating thereto. First Amendment, Constitution of the United States, Article 1, § 8, Constitution of Texas, Vernon's Ann.St.

Shortly after our opinion in this case was handed down, a copy thereof was requested by and delivered to Commerce Clearing House, Inc., publishers of information relating to judicial decisions and governmental actions. It is our custom to make any opinion of this Court available to all publishers when a copy thereof is requested by one of them. In view of this established policy, we must decline appellant's request as to non-publication of the opinion.

Appellant's motion for rehearing is overruled.