**TIMES HERALD PRINTING
COMPANY, Appellant,**

v.

**Wayne C. JONES, M.D., Wayne C.
Jones, a Professional Corporation
and Carolyn Tuttle, Appellees.**

No. 05–85–00301–CV.

Court of Appeals of Texas,
Dallas.

Aug. 5, 1986.
Rehearing Denied Oct. 16, 1986.

Charles L. Babcock, Fred D. Wilshusen, Dallas, for appellant.

John H. Martin, Judy C. Norris, Dallas, for appellee, Wayne C. Jones, M.D.; Robert H. Mow, Jr., Bruce W. Collins, Dallas, of counsel.

Timothy E. Kelley, Dallas, for appellee Carolyn Tuttle.

## ON MOTION FOR REHEARING

STEPHENS, Justice.

On motion for rehearing, the court, sitting en banc, withdraws its former opinion and substitutes this one.

The Times Herald Printing Company seeks reversal of a trial court's judgment sealing the records of a civil suit in which the parties to the suit settled the suit without trial, conditioning their settlement upon the sealing of the records. The Times Herald contends, in numerous points of error, that the sealing order abridges its rights guaranteed under Article 1, Section 8 of The Texas Constitution, violates the First Amendment to the United States Constitution, and denies it the common law right of access to judicial records for the purpose of inspecting and copying. In conjunction with these contentions the Times Herald argues that there was no evidence, or insufficient evidence to justify the sealing order.

Appellees counter these points, and by way of cross-points contend that this appeal should be dismissed because the trial court had no jurisdiction to grant the relief sought by the Times Herald; first, because the Times Herald was not a party to the original suit; and second, because the trial court had lost its plenary power over the

case before the Times Herald entered the case, seeking an unsealing of the records.

We conclude that we have jurisdiction of this appeal; we disagree with the arguments advanced by the Times Herald. Accordingly, we affirm the judgment of the trial court.

## STATEMENT OF FACTS

In the original action an individual sued a physician in his individual capacity and his professional corporation, seeking damages. The physician answered, filed special exceptions, sought a protective order limiting disclosure of the contents of depositions taken, and filed a motion for partial summary judgment. Other matters were filed and heard such as motions to compel answers, pleas in abatement, and motions for continuance. Finally, on November 29, 1983, before trial, an agreed final judgment signed by the parties and their attorneys, providing that "the records of this case be sealed from public access and disclosure" except as to the parties to the suit, was submitted to and entered by the court.

On June 7, 1984, some five months and several days after the entry of the judgment, the Times Herald filed its motion to unseal court records and to remove restrictions on the press. The motion was filed in the original cause seeking access to "pleadings, discovery and other court records" in the case. The contention advanced to the trial judge was essentially that the record contained information of importance to the public. On appeal, the Times Herald has abandoned its quest for access to the depositions and discovery in the case and seeks only access to the "Orders, opinions and non-discovery pleadings" filed with the District Clerk and to remove any restraint upon publication of all or a portion of these public records. Additionally, on appeal, the thrust of the Times Herald's argument in favor of unsealing the records is so that the public might be more informed, and thus more capable of evaluating the performance of a certain judge, for purposes of re-election.

## JURISDICTION

First we address the question of the trial court's and this court's jurisdiction in the posture in which the appeal reaches us. Appellees' argument as to jurisdiction is two-fold: first, the question of the Times Herald's standing is placed in issue, because it was not a party of record to the original action; and second, the trial court's plenary power to change or alter the judgment is questioned. Appellees rely on *Hubbard v. Lagow*, 559 S.W.2d 133 (Tex.Civ.App.—Austin 1977), *rev'd on other grounds* 567 S.W.2d 489 (1978), *on remand*, 576 S.W.2d 163 (1979); and *Gunn v. Cavanaugh*, 391 S.W.2d 723, 724 (Tex. 1965). We agree with appellees that generally non-parties of record have no standing to appeal a trial court's judgment. We also agree that the trial judge had lost plenary power to *alter* or to *change* the judgment. However, the part of that judgment sealing the records did affect the rights of Times Herald; therefore, it may attack that portion by direct or collateral proceedings. *See Dean v. First National Bank of Athens*, 494 S.W.2d 222, 226 (Tex.Civ.App. —Tyler 1973, writ ref'd n.r.e.) (citing *Kirby Lumber Corp. v. Southern Lumber Co.*, 145 Tex. 151, 196 S.W.2d 387 (1946)); *Standard Oil Co. v. State*, 132 S.W.2d 612, 614 (Tex.Civ.App.—Austin 1939, writ dism'd judgmt cor.). *See also Meyer v. Wichita County Water Improvement Dist.*, 265 S.W.2d 660, 665 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.); *Bussan v. Donald*, 244 S.W.2d 271, 273 (Tex.Civ.App.—Fort Worth 1951, writ ref'd n.r.e.). We treat Times Herald's motion to unseal as a new cause of action brought by the Times Herald for the sole purpose of gaining access to the records previously sealed, and not to change or affect the settlement of the parties. All parties to the original suit as well as the Times Herald were before the court, just as though service of citation had been perfected in a new and independent cause.

Thus, we conclude that the trial court had jurisdiction to entertain the Times Herald's motion to unseal, and that the Times Herald had duly perfected its appeal from

the trial court's action on its motion to this court. Appellees' cross-points of error are overruled.

## COMMON–LAW RIGHT OF ACCESS

The Times Herald argues that it has a common-law right of access to court records. Although no Texas authority is cited for this proposition, and we have found none, we agree generally with this contention.

■■■ The United States Supreme Court, in *Nixon v. Warner Communications, Inc.* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), recognizes a general common-law right to copy and inspect public records and documents, including judicial records and documents, yet holds that each court has supervisory power over its own records and files, including the right to deny access to the court's files where such files might become a vehicle for improper purposes. The Court goes on to state that the common-law right of inspection has bowed before the power of a court to insure that its records are not used to gratify spite, promote public scandal, or for the publication of "the painful and sometimes disgusting details of a divorce case." *Warner,* 435 U.S. at 598, 98 S.Ct. at 1312 (quoting *In re Caswell,* 18 R.I. 835, 836, 29 A. 259 (1893)). Perhaps the most significant language to be found in *Warner,* insofar as this case is concerned, is in the following quote:

> It is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate. The few cases that have recognized such a right do agree that the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.

*Id.* 435 U.S. at 599, 98 S.Ct. at 1312 (footnotes omitted). We conclude that, although as a general proposition, a common-law right of inspection and copying judicial records exists, this right is not absolute, and must bow to the discretion of the trial judge in making a decision based upon the facts of a particular case. In this case the trial judge chose to seal the records in compliance with the parties request, and finding no abuse of discretion, we decline to disturb the trial court's action.

## TEXAS CONSTITUTION

### Article 1, Section 8

The Times Herald argues Article 1, section 8 of the Texas Constitution is even broader than the First Amendment to the United States Constitution in its treatment of access to court records. Philosophical argument as to the necessity of openness of court proceedings are made, citing general authority extending back to the Virginia Bill of Rights in 1776. The arguments are persuasive as to general canons of law, but are not persuasive in the context of this case. Most of the cases cited address criminal trials; only one addresses a civil trial, and its context is of a criminal nature; i.e. the detention and release of criminals from prison—a subject matter of considerable importance to the public. However, no case, in this or any other jurisdiction, has been offered to address the question of the propriety of unsealing records of a suit in which, before trial on the merits but after certain pre-trial motions have been heard and ruled upon, the parties have reached a settlement conditioned upon the sealing of the records.

Most of the cases cited concern the right of the press to publish information in its possession, cases concerning "freedom of expression" rather than the press's "right of access" to judicial records. Those cases dealing with the "right of access" concern criminal proceedings. *Houston Chronicle Publishing Co. v. Shaver,* 630 S.W.2d 927 (Tex.Crim.App.1982); *Houston Chronicle Publishing Co. v. McMaster,* 598 S.W.2d 864 (Tex.Crim.App.1980). We do not find the historical practice and the intertwining aspects of public policy consideration underlying the recognition of this "right of access" to criminal proceedings to be

present in the case before us. Accordingly, we decline to construe Article 1, section 8 of the Texas Constitution as providing a greater right of access than does the First Amendment to the United States Constitution.

### RIGHT OF ACCESS AS PROVIDED BY THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

We recognize, as the Times Herald argues, that the United States Supreme Court has held that the First Amendment does assure a right of access to criminal trials. *Press Enterprises Co. v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 824, 78 L.Ed. 629 (1984) (voir dire proceedings), *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 610–11, 102 S.Ct. 2613, 2622, 73 L.Ed.2d 248 (1982) (minor's testimony during rape trial); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 575, 100 S.Ct. 2814, 2826, 65 L.Ed.2d 973 (1980) (criminal trial).

Thus, the crucial question before us is whether the freedom-of-the-press clause of the First Amendment requires us to apply to the trial court's order refusing to open its sealed records for inspection the same heightened scrutiny required in the case of an order denying public access to a criminal trial. The standard for this heightened scrutiny was formulated by Chief Justice Burger in *Press Enterprises,* when he stated:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Press Enterprises,* 104 S.Ct. at 824; *see also Globe Newspaper* 457 U.S. at 606–07, 102 S.Ct. at 2619–20; *Richmond Newspapers,* 448 U.S. at 580–81, 100 S.Ct. at 2829. *In re the Reporter's Committee for Freedom of the Press,* 773 F.2d 1325 (D.C.Cir. 1985), stated that "the precise contours of

that right are in the process of being drawn" and the principle underlying these decisions "has not yet been applied to access to civil trials (though the Court has perhaps intimated that it [applies] there), much less to access to *records* in civil trials —or, for that matter, even records in criminal trials." *In re Reporters Committee,* 773 F.2d at 1331 (emphasis in original) (citations omitted). We further note with interest that Justice O'Connor in her concurring opinion in *Globe Newspaper,* 457 U.S. at 612, 102 S.Ct. at 2623, states, "Thus, I interpret neither *Richmond Newspapers* nor the Court's decision today to carry any implications outside the context of criminal trials." *Globe Newspaper,* 457 U.S. at 611, 102 S.Ct. at 2622. In that same case, Chief Justice Burger, in his dissenting opinion, joined by Justice Rehnquist wrote the following: "The Court seems to read our decision in *Richmond Newspapers* as spelling out a First Amendment right of access to all aspects of all criminal trials under all circumstances. That is plainly incorrect." *Globe Newspaper,* 457 U.S. at 613, 102 S.Ct. at 2623 (citations omitted).

Perhaps the Supreme Court case most closely dealing with the First Amendment right of access to judicial records is the Court's decision in *Nixon v. Warner,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570. There, the Court rejected a claim by the press that access to the Watergate tapes, previously admitted into evidence in a criminal trial, was mandated by the freedom-of-the-press clause of the First Amendment. The Court also observed with respect to the claimed common-law right of access, that the trial court, as custodian of the tapes obtained by subpoena,

> has a responsibility to exercise an informed discretion as to release of the tapes, with a sensitive appreciation of the circumstances that led to their production. This responsibility does not permit copying upon demand. Otherwise, there would exist a danger that the court could became a partner in the use of the subpoenaed material "to gratify private spite or promote public scandal," *In re*

*Caswell, supra,* [18 R.I. 835], at 836, 29 A. 259, with no corresponding assurance of public benefit.

*Id.* 435 U.S. at 603, 98 S.Ct. at 1314.

This holding has not been expressly, or impliedly overruled, nor questioned in subsequent Supreme Court decisions dealing with the First Amendment right of access. *See e.g. Richmond Newspaper,* 448 U.S. at 581, n. 18, 100 S.Ct. at 2830, n. 18. Moreover, in *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 2205, 2207, 81 L.Ed.2d 17 (1984), the Court held that a protective order preserving the confidentiality of information obtained under the Washington civil discovery rules was not subject to heightened First Amendment scrutiny, disapproving contrary holdings in *In re Halkin,* 598 F.2d 176 (D.C.Cir.1979), and *In re San Juan Star,* 662 F.2d 108 (1st Cir.1981). In *Seattle Times* the Court said that the trial court's discretion in such matters was necessary because the trial court "is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." 104 S.Ct. at 2209.[1]

The sealed records in this case do not contain information already disseminated to the public or even well known to the public as in *Warner.* Nor do they raise the question of disclosure of information obtained by discovery, as in *Seattle Times,* since the Times Herald has abandoned its request for the discovered information and now limits its request to nondiscovery pleadings and orders. Our question, therefore, is whether the heightened First Amendment scrutiny standard, as enunciated by Justice Burger in *Press-Enterprises,* applies to the materials here sought.

For the very limited decision to be rendered in this case, we assume, without deciding, that the presumption of a public right of access to judicial records applies to civil cases as well as criminal cases. *See Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1068–069 (3rd Cir.1984); *In re Continental Illinois Securities Litigation,* 732 F.2d 1302, 1308 (7th Cir.1984); *Brown & Williamson Tobacco Corp. v. Federal Trade Commission,* 710 F.2d 1165, 1178–79 (6th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984).

It has long been recognized that every court has supervisory powers over its own records and files and may deny access when court files may be used for improper purposes. *Warner,* 435 U.S. at 598, 98 S.Ct. at 1312; *In re Reporters Committee,* 773 F.2d at 1333. Among the competing interests that may be recognized as supporting denial of access are private rights of participants or third parties, trade secrets, and national security. *Brown & Williamson,* 710 F.2d at 1180; *see Seattle Times,* 104 S.Ct. at 2208 (privacy interest of prospective jurors balanced against public interest in open trials); *United States v. Hickey,* 767 F.2d 705, 708 (10th Cir.1985) (sealed plea bargain).

■ We also recognize that an agreement of the parties to deny public access is not binding on the court. *Brown & Williamson,* 710 F.2d at 1180. Nevertheless, once a confidentiality order has been entered by the court and relied upon by the parties, it should be modified only in extraordinary circumstances, or to meet a compelling need. *Federal Deposit Insurance Corp. v. Ernst & Ernst,* 677 F.2d 230, 232 (2nd Cir.1982) (challenge based on Freedom of Information Act); *see Martindell v. International Telephone & Telegraph,* 594 F.2d 291, 296 (2nd Cir.1979) (reliance by witness on protective order sealing deposition).

---

1. The Court also observed that pretrial depositions and interrogatories are not public components of a civil trial and noted that both state and federal discovery rules authorize the trial court to order that discovery materials not be filed, or be filed under seal, and "[t]hus to the extent that courthouse records could serve as a source of public information, access to that source customarily is subject to the control of the trial court." 467 U.S. 20, 104 S.Ct. at 2207, n. 19.

An agreement may justify denial of public access, when, as in the present case, there is a binding contractual obligation between the parties to disclose certain information which to the court seems innocuous, yet may be newsworthy, and unbridled disclosure of the nature of the controversy would deprive a litigant of his right to enforce a legal obligation. *Publicker Industries*, 733 F.2d at 1073.

■ After balancing the interests at stake, we conclude that notwithstanding the arguments advanced by the Times Herald, absent a showing of some extraordinary circumstances or compelling need, neither of which appear here, the limited right of access to judicial records afforded by the First Amendment to the United States Constitution does not mandate the opening of the records in this case.

## STATE'S INTEREST IN SETTLEMENT OF LITIGATION

There is yet another compelling reason for upholding the trial court's sealing order; the State has a substantial interest in the settlement of litigation. The Times Herald's counsel agreed with this premise during oral argument. The State's interest in promoting settlements, when weighed against the right of access, may prevail. In our litigious society, for us to take the position that private litigants, who have settled their dispute before calling upon a court or jury to find true the facts alleged in the pleadings, and who have settled in reliance upon the court's agreement to seal the record from public disclosure, have no right to expect the confidentiality to which they agreed and to which they were assured, would seriously impair the settlement process and would increase the trial overload which presently exists in our judicial system.

Although no cases in this jurisdiction have addressed this precise concern, the United State Supreme Court, in *Seattle Times*, 104 S.Ct. 2199, affirmed a decision of the Supreme Court of Washington approving an order of the trial court sealing certain information obtained under the State discovery rules. The United States Supreme Court commented that the Supreme Court of Washington had properly emphasized the importance of ensuring potential litigants unimpeded access to the courts, and quoted from that court's opinion as follows:

> [A]s the trial court rightly observed, rather than expose themselves to unwanted publicity, individuals may well forego the pursuit of their just claims. The judicial system will thus have made the utilization of its remedies so onerous that the people will be reluctant or unwilling to use it, resulting in frustration of a right as valuable as that of speech itself. [Rhinehart v. Seattle Times Co., 98 Wash.2d 226] 654 P.2d at [673] 689.

*Id.* at 2209 n. 22.

Furthermore, a commentator has pointed out that the public interest in encouraging settlement of litigation is a legitimate ground for an agreed order sealing confidential information without requiring detailed findings with respect to each item suppressed. Marcus, *Myth and Reality in Protective Order Litigation*, 69 CORNELL L.REV. 1, 27–28 (1983). This same commentator also observes that the reasons supporting access to evidentiary material on which judicial decisions are based have little weight when a motion for summary judgment has been denied and suggests that access on this ground be limited to material forming the basis for a decision on the merits. *Id.* at 49.

This approach is consistent with the rationale usually given for public access to judicial proceedings, whether based on common-law or the First Amendment, which is said to be the enhancement of the basic fairness of the trial and the appearance of fairness essential to public confidence in the system. *Press-Enterprise*, 104 S.Ct. at 823. This rationale was stated long ago by Justice Holmes in *Cowley v.*

*Pulsifer*, 137 Mass. 392, 394 (1884), as a basis for the privilege of reporting judicial proceedings in the press, but Justice Holmes went on to hold that no such privilege existed with respect to pleadings that had never come before the court for a ruling:

> [I]t is clear that [these grounds] have no application whatever to the contents of a preliminary written statement of a claim or charge. These do not constitute a proceeding in open court. Knowledge of them throws no light upon the administration of justice. Both form and contents depend wholly on the will of a private individual, who may not be even an officer of the court. *Cowley*, 137 Mass. at 394.

*In re Reporters Committee*, 773 F.2d at 1335; *cf. Express Publishing Co. v. Gonzalez*, 326 S.W.2d 544, 547–48 (Tex.Civ.App. —San Antonio 1959, writ dismissed) (Barrow, J., concurring) (abandoned petition in fraud suit was "no part of the proceedings had in the trial court").

■ In light of these authorities, we conclude that the circumstances of the present case do not require that the trial court's order refusing to open its previously sealed records be subjected to the heightened First Amendment scrutiny required in the case of closure of public trials. We hold, rather, that the order is properly reviewed for abuse of discretion in accordance with the less rigorous standard recognized in *Nixon v. Warner* and *Seattle Times*.

■ Applying this less rigorous standard, we find no abuse of discretion. None of the materials is relevant to a decision on the merits of the underlying litigation except, perhaps, the order denying the motion for summary judgment, which was only a preliminary ruling that a fact issue existed.

The parties to that litigation agreed to an order sealing the records, and they settled their dispute in reliance on that order. Months later, when the Times Herald brought this proceeding to unseal the records, the trial judge heard evidence and argument of counsel and made a careful statement of his findings concerning the various factors he considered, including the parties' reliance on the closure order in making their settlement. The detailed findings in the trial court's written order are consistent with Justice Burger's mandate for "articulated findings" in *Press-Enterprise*.[2] The trial judge included his findings in a written opinion discussing both the facts and the law, which he ordered sealed so as not to nullify the confidentiality required by his original closure order.

After reviewing the evidence at the hearing, the records ordered sealed, the trial court's findings, and its opinion, we conclude that the trial court's action in sealing the records was within his discretionary authority, that there was a substantial basis for the court's refusal to unseal the records, and no abuse of discretion is shown.

The judgment of the trial court is affirmed, and appellant's motion for rehearing is denied.

GUITTARD, C.J., and VANCE, DEVANY, HOLLINGSWORTH, McCLUNG and STEWART, JJ., join in this opinion.

WHITHAM, J., files a concurring opinion.

HOWELL, J., files a dissenting opinion.

McCRAW, J., files a dissenting opinion in which AKIN, HOWELL and SCALES JJ., join.

---

**2.** We recognize that the Court in *Press-Enterprises* was addressing the question of closure of criminal proceedings, and was not addressing the propriety of sealing pre-trial pleadings in a civil suit, yet we believe that the Court's statement that "[t]he interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered", is a proper guideline to be followed by the trial court so that an appellate court may properly review the trial court's action for abuse of discretion, even though other requirements of heightened First Amendment scrutiny may not apply. We do not decide, however, whether such findings are required in this kind of case.

ON MOTION FOR REHEARING

WHITHAM, Justice, concurring.

The case is before us en banc on motion for rehearing. I withdraw my concurring opinion of March 4, 1986. The following is now my concurring opinion.

I join in the majority's opinion. In doing so, I am influenced by a sentence contained in the Supreme Court's opinion in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 2207–08, 81 L.Ed.2d 17 (1984) in footnote nineteen. There the court states that "[t]hus, to the extent that courthouse records could serve as a source of public information, access to that source customarily is subject to the control of the trial court." Admittedly, *Rhinehart* involved first amendment rights to disseminate, in advance of trial, information gained through the pretrial discovery process. Nevertheless, the Supreme Court's broad reference in the above-quoted sentence to "courthouse records" in a first amendment context must mean something. Otherwise, the Supreme Court would not have expanded the subject matter of "discovery" to the more broad scope of "courthouse records" in footnote nineteen. Therefore, I interpret the above-quoted sentence from *Rhinehart* to cover the orders, opinion and nondiscovery pleadings sought by the Times Herald in the present case. Thus, the present case involves an alleged First Amendment right of the press to access to courthouse records under the control of a trial court. Therefore, in the context of the present case, I read the above-quoted sentence from *Rhinehart* to mean that trial court control of courthouse records does not violate First Amendment rights of the press. The right to speak and publish does not carry with it the unrestrained right to gather information. *Rhinehart*, 104 S.Ct. at 2207 (quoting *Zemel v. Rusk*, 381 U.S. 1, 16–17, 85 S.Ct. 1271, 1280–81, 14 L.Ed.2d 179 (1965)). Moreover, in my view, the Times Herald has shown no valid reason for this court to interfere with the trial court's control over its records.

I am also influenced to join in the majority opinion by the Supreme Court's approach to the question before it in *Rhinehart*:

> In addressing that question it is necessary to consider whether the "practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression" and whether "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved."

*Rhinehart*, 104 S.Ct. at 2207. In my view, the trial court's sealing order furthers an important and substantial governmental interest of the State of Texas; i.e., to encourage and facilitate the settlement of lawsuits pending in its courts. Furthermore, this important and substantial interest of the State is unrelated to the suppression of expression. To my mind, the State's interest in encouraging and facilitating settlement of lawsuits pending in its courts stands unconnected to the suppression of expression. Obliging settlement of a lawsuit before trial on the merits is one thing. Hanging a newspaper editor for story content is another. Moreover, the limitation imposed by the trial court's sealing order is no greater than is necessary or essential to the protection of the State's interest in encouraging and facilitating the settlement of lawsuits pending in its courts. All the trial court did was accommodate an agreement of the parties to a lawsuit who wished to settle their dispute before trial on the merits. By so doing, the trial court did no more than encourage and facilitate the settlement of a lawsuit pending in a court of the State of Texas. The trial court did not order the Times Herald to cease gathering information about the lawsuit or about a certain judge for purposes of re-election evaluation. The trial court did not order the Times Herald never to publish information about the lawsuit or about a certain judge for purposes of re-election evaluation. On balance, therefore, I must conclude that the asserted First Amendment right of the Times Herald to the orders, opinion and non-discovery pleadings

sought by the Times Herald must yield to a legitimate interest of the State of Texas which is unrelated to the suppression of expression and which is advanced within permissible limits.

Therefore, I agree with the majority that the common law right of access must bow to the sound discretion of the trial court and that neither the state nor the federal constitution affords the Times Herald a right of access to the "courthouse records" sought.

McCRAW, Justice, dissenting.

I must dissent. I would hold that the trial court had no jurisdiction to hear the Times Herald's case. Inasmuch as our jurisdiction is by way of appeal, we are likewise without jurisdiction. In a memorandum opinion the trial court made the following finding:

> It is not necessary in this case to resolve the significant jurisdictional issue raised but not fully addressed by the parties. Because the Court concludes that the Times Herald's motion must be denied on the merits, the Court does not decide the difficult and significant issue of its jurisdiction to consider the motion.

The court then proceeded to deny the Times Herald's motion styled, "Motion to Unseal Court Records and to Remove Restrictions on the Press." I would hold that the trial court does not have the luxury of avoiding the "difficult and significant issue of its jurisdiction," but must, upon proper motion, determine the issue of jurisdiction *before* ruling on the merits. This clearly did not occur in this case.

I adhere to the majority's statement that generally nonparties of record have no standing to appeal a trial court's judgment and that the trial court lost plenary power to alter or change the judgment. I cannot, however, agree with the majority that the Times Herald's motion in this cause was

the equivalent to a new petition in a new cause of action. The Times Herald is not a party to the original proceeding; neither did it petition to intervene. TEX.R.CIV.P. 60. Consequentially, it has no standing to appeal a final judgment entered in a proceeding to which its the Times Herald, was not a party. *California and Hawaiian Sugar Co. v. Bunge Corp.*, 593 S.W.2d 739, 740–41 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

The general rule in Texas is that the remedy by appeal in the usual form, or by writ of error, is available only to parties to the litigation which resulted in entry of the challenged judgment. *Gunn v. Cavanaugh*, 301 S.W.2d 723, 724 (Tex.1965); *Bunge*, 593 S.W.2d at 740. The Times Herald attempts to portray itself as a party to this cause of action for the first time upon appeal in it's brief filed with this court.[1] The record does not demonstrate that the Times Herald was ever a party to the cause of action presented at the trial court; or an intervenor, TEX.R.CIV.P. 60; or an additional party as provided for in Texas Rules of Civil Procedure 37 and 41, therefore, the appeal must be dismissed. The Times Herald was not properly before the trial court and, therefore, is not properly before this court. *See Bilbo Freight Lines, Inc. v. State*, 645 S.W.2d 925, 926–27 (Tex.1983). I would vacate the order of the trial court and dismiss all proceedings brought by the Times Herald.

AKIN, SCALES and HOWELL, JJ., join in this dissenting opinion.

HOWELL, Justice, dissenting.

I dissent. First, I would vacate the trial court's ruling for want of jurisdiction for the reasons stated in Justice McCraw's opinion. If I were to reach the majority, I would reverse and grant the right of access to appellant as outlined herein.

---

**1.** The appeal is styled: *The Times Herald Printing Co. v. Jones, M.D.; Wayne C. Jones, a Professional Corp.; and Carolyn Tuttle.* The appeal bond and all other documents, including the Times Herald's motion to unseal the court records are brought under the style: *Carolyn Tuttle v. Wayne C. Jones, M.D.; and Wayne C. Jones, a Professional Corp.* Trial court cause number 82–10626D.

The majority bases its First Amendment analysis on a case decided before the First Amendment right of access was fully explicated. It misinterprets the emerging jurisprudence of access and refuses to employ the United States Supreme Court's methodology in determining the scope of access rights. From such faulty premises, a sound conclusion could not have been expected.

The majority finds that *Nixon v. Warner Communications*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) provides the closest factual analog. *Warner*'s factual similarity is far outweighed by the differences in legal issues presented. *Warner* involves a request for access to the Watergate tapes and begins by distinguishing between access rights and the rights of publication. Previous cases had confirmed the press's right to publish that information which had already come into its possession. *Cox Broadcasting v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). The *Warner* court commenced with the *Cox* premise stating:

> [T]he issue presented in this case is not whether the press must be permitted access to public information to which the public is guaranteed access, but whether these copies of the White House tapes— to which the public has never had *physical* access—must be made available for copying.

*Warner*, 435 U.S. at 609, 98 S.Ct. at 1317. The court went on to state the often-cited proposition that the press has no greater right to information than that of the general public. *Id.*

Read properly, *Warner* only affirms that the press has no special right to information unavailable to the public. If this reading is correct, the case before us is readily distinguishable. The Times Herald is not seeking special access, only the access to which any citizen is entitled. *See In re Reporter's Committee For Freedom of the Press*, 773 F.2d 1325, 1331 (D.C.Cir.1985) (In *Warner* "the point of a First Amendment right of public access was not raised and not explicitly decided."). It is impor-

tant to note that unlike *Warner*, the sealed information in the case at hand was once available for inspection and reporting. Here, the actual flow of information has been impeded.

To the extent *Warner* reaches the question of First Amendment access rights, its import is clear. The First Amendment protects expression and dissemination, not access. This holding was dramatically affected by three subsequent Supreme Court decisions.

In *Richmond Newspapers v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the Supreme Court announced for the first time a right of access to criminal trials. Chief Justice Burger, writing for the plurality, examined the history of criminal trials in Anglo-American jurisprudence. He concluded that trials had traditionally been open to the public. He further stressed the functional role of publicity in educating the public and providing an outlet for the community's "natural yearning to see justice done." 448 U.S. at 571, 100 S.Ct. at 2824. The right to attend trials, he stated, was implicated in the enjoyment of freedom of speech and press. 448 U.S. at 577, 100 S.Ct. at 2827. The government may not summarily foreclose the traditional open channel of public information, "absent an overriding interest articulated in findings." 448 U.S. at 581, 100 S.Ct. at 2829.

The landmark nature of *Richmond Newspapers* was instantly recognized. Justice Stevens remarked:

> This is a watershed case. Until today the Court has accorded virtually absolute protection to the dissemination of information or ideas, but *never before has it squarely held that the acquisition of newsworthy matter is entitled to any constitutional protection whatsoever.* [emphasis added]

448 U.S. at 582, 100 S.Ct. at 2830. (Stevens, J., concurring). With *Richmond Newspapers* a new day dawned and it, not *Warner*, must govern the case at hand.

The second access decision was *Globe Newspapers v. Superior Court*, 457 U.S.

596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). The case concerned a Massachusetts statute requiring closure of trials during the testimony of minor complainants in sex offense cases. The Court ruled that mandatory closure violates the First Amendment. 457 U.S. at 602, 102 S.2d at 2617. Justice Brennan, writing for the majority, again stated the rationale for access—the tradition of openness and the salutary effects of publicity on the administration of justice. 457 U.S. at 605–06, 102 S.Ct. at 2619. Although the access right is not absolute, a state seeking to inhibit disclosure must show a *compelling state interest* and *narrowly tailor* its restrictions to meet that interest. 457 U.S. at 607, 102 S.Ct. at 2620.

In its third decision, *Press-Enterprise Company v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), the Supreme Court extended access protection to jury voir dire proceedings. Again, the Court reviewed both the history of jury selection and the function of publicity in the judicial system and concluded that blanket denial of access was unconstitutional. 104 S.Ct. at 824–25.

The majority alludes to these decisions but summarily distinguishes them as "criminal proceedings" (Maj.op. 936). The majority wholly fails to discuss or analyze the distinction that it perceives between civil and criminal cases. This dissent would hold that the similarities far outweigh the dissimilarities.

The overarching flaw in the majority's analysis is that in determining whether or not access rights apply in this case, it has not employed the method used by the Supreme Court. It reaches the wrong result because it asks the wrong question. The Supreme Court's reasoning in the three criminal cases outlines a clear methodology for determining the scope of access rights. When resolving issues involving these rights, the Supreme Court has not examined whether there has been a tradition of access with respect to information of a particular character involved or whether that information is of significant public interest. Rather it has inquired whether

there has *historically been public access* to this particular part of the judicial process and whether access to that portion of the process will *significantly enhance public understanding and appreciation* of the judicial process or improve the process itself.

*United States v. Smith*, 776 F.2d 1104, 1114 (3d Cir.1985) (emphasis added). *See In re Reporter's Committee*, 773 F.2d at 1331. The proper inquiry then is an historical and a functional one. We must examine whether the factors that demand openness in the criminal trial context apply to civil cases as well.

There is little doubt that civil as well as criminal proceedings partake of a historical presumption of openness. Reviewing courts have consistently stated that civil and criminal trials have traditionally been open for public scrutiny. *Richmond Newspapers*, 448 U.S. at 580 n. 17, 100 S.Ct. at 2829 n. 17; *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n. 15, 99 S.Ct. 2898, 2908, n. 15, 61 L.Ed.2d 608; *Publicker Industries v. Cohen*, 733 F.2d 1059 (3d Cir.1984); *Brown & Williamson Tobacco Co. v. Federal Trade Commission*, 710 F.2d 1165 (6th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984).

It is also evident that public access to civil proceedings plays a significant role in the proper "functioning of the judicial process and the government as a whole." *Globe Newspaper*, 457 U.S. at 606, 102 S.Ct. at 2619. Justice Burger has written of a "community therapeutic value,"—a type of catharsis gained by seeing justice done. *Press-Enterprise*, 104 S.Ct. at 823; *Richmond Newspapers*, 448 U.S. at 570, 100 S.Ct. at 2823. Perhaps access to civil trials does not provide so striking a public therapy. Nevertheless, the glare of public scrutiny is of value to the process. Requiring judges to work in the public view makes them more directly responsible for their decisions. *Brown & Williamson*, 710 F.2d at 1179; *See Wilson v. American Motors*, 759 F.2d at 1568, 1570 (11th Cir. 1985). Publicity discourages perjury and

may impel new witnesses to come forward. *Brown & Williamson,* 710 F.2d at 1179.

Under a form of government where the assent of the governed is given primacy, it is imperative not only that the courts be just but that they appear to be just. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers,* 448 U.S. at 572, 100 S.Ct. at 2824. Secrecy breeds distrust and disillusionment. Abuses exposed can be remedied. Abuses concealed can only fester.

These potent policy considerations apply with equal force to the administration of both civil and criminal justice. Today, the business of the civil courts touches and concerns the whole population. Environmental concerns, race relations, the conduct of the professions, product safety, and a host of noteworthy issues pass through the civil courts. The impact of their decisions is daily felt by the whole people. To deny public access to civil proceedings is to shut away from the people an institution that governs their lives.

The historical-functional analysis provides adequate justification for a right of access to documents as well as oral proceedings. As the majority correctly states, there is a well-established common law right to inspect judicial documents. *Nixon v. Warner Communications,* 435 U.S. at 597, 98 S.Ct. at 1311; *In the Matter of Continental Illinois Securities Litigation,* 732 F.2d 1302, 1308 (7th Cir.1984). *See generally* Annot., 84 A.L.R.3d 598 (1978). Although this right is subject to limitation, *Warner,* 435 U.S. at 598, 98 S.Ct. at 1312, there is a presumption of openness in court documents. *United States v. Edwards,* 672 F.2d 1289, 1293–94 (7th Cir.1982) (and cases cited therein). Clearly, the tradition of access extends to records.[1] This writer further notes that this state has traditionally afforded access to judicial opinions. *Alamo Motor Lines v.*

*International Brotherhood of Teamsters,* 229 S.W.2d 112, 117 (Tex.Civ.App.—San Antonio 1950, no writ).

Access to court documents also has a vital governmental function. "Official records and documents open to the public are the basic data of governmental operations." *Cox Broadcasting,* 420 U.S. at 492, 95 S.Ct. at 1044. The work of our civil courts is in large measure documentary. Pleadings and motions provide the schematic for decision making. They frame the issues to be decided. Opinions are the tangible fruits of the adjudicatory process. They explain the reasoning and precedent underlying the exercise of judicial power. Judgments are the final product, the statement of the court's command. Obviously, some proceedings, such as summary judgments, are conducted solely in documentary form. If an open judiciary is mandated, judicial records must themselves be open. Access to the records serves a vital public function in illuminating the judicial process and deterring its misuse. *United States v. Edwards,* 672 F.2d 1289, 1294 (7th Cir. 1982); *United States v. Mitchell,* 551 F.2d 1252, 1258 (D.C.Cir.1976), *rev'd on other grounds sub nom. Nixon v. Warner Communications,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).

Obviously, the functional role of access to court records is somewhat diminished where, as in the present case, the litigation comes to an end without trial. Yet the writer perceives a public interest in knowing how the judicial system is used by its litigants, what types of plaintiffs opt out of the system, and what types of defendants buy their peace. The civil justice system itself has become controversial. An understanding of its functions must take into account abridged as well as completed litigation. Considering the tradition of access to court records and the vital role they play, First Amendment protection is mandated.

---

1. The precise contours of the traditional right are difficult determine. *See Reporter's Committee,* 773 F.2d at 1332–1336 (No right of access to documents before *judgment*); *Id.* at 1348–1351 (Wright, J., dissenting) (Right of access arises at time of *trial.*)

Thus the case for extending First Amendment protection to access to civil court documents is compelling. Even the majority appears to concede this grudgingly. But the majority would permit the trial court to abrogate this right on the flimsiest of grounds. Perhaps the most disturbing aspect of the majority's opinion is its failure to furnish proper guidance to trial courts in making access determinations. The majority opinion leaves the closure of records to the judicial whim; discretion is to be governed by the length of the chancellor's foot.

Where First Amendment rights are at stake, a different standard is mandatory: "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise,* 104 S.Ct. at 824. *See Globe Newspaper,* 457 U.S. at 606–07, 102 S.Ct. at 2619–20; *Smith,* 776 F.2d at 1109; *Publicker Industries,* 733 F.2d at 1070; *Wilson,* 759 F.2d at 1571. No lesser standard of protection exists; there are no second-class First Amendment rights. It is necessary, therefore, to apply this mandated standard in evaluating the trial court's order to seal the record.

The majority opinion does attempt to raise what it views as compelling state interests to justify the closure order. Before examining them individually, this author would observe that some of the cited interests, settlement of litigation for example, were not employed by the trial court. Furthermore, the interests given are not discussed in terms of the case presently before us. Indeed, the majority's language regarding the settlement interest is so broad it licenses the closure of records in every case that is settled without a complete trial on the merits. We note that the case at hand was "tried" in summary judgment proceedings, but the majority refuses to distinguish on these grounds. Finally, the majority has completely reversed the burden of persuasion by stating that "absent a showing of some extraordinary circumstances or compelling need, neither of which appear here, the limited right of access to judicial records ... does not mandate the opening of the records in this case." Although the access cases are inconsistent, they speak with one voice in declaring that openness is the norm and is to be presumed. Those that insist on secrecy are burdened to show "extraordinary circumstances" or "compelling need."

As this writer reads the majority, the primary factor set forth in opposition to access is the parties' agreement to seal the records. This should be given little weight. The public has an independent interest in the record that the parties may not foreclose by mere agreement. *Wilson,* 759 F.2d at 1571. If the matter were left entirely to the litigants and disclosure forbidden unless at least one party consented to public access, the vast majority of civil records would be screened from the public view. A drastic diminution of the stock of information available to those who pay for the creation and operation of the courts would inevitably result.

It is urged that encouraging settlement provides a compelling state interest. This is not so.

> There is no question that courts should encourage settlements. However, the payment of money to an injured party is simply not "a compelling governmental interest" legally recognizable or even entitled to consideration in deciding whether or not to seal a record. We feel certain that many parties to lawsuits would be willing to bargain (with the adverse party and the court) for the sealing of records after listening to or observing damaging testimony and evidence. Such suspension of public records cannot be authorized.

*Wilson,* 759 F.2d at 1571–72 n. 4. *See also Brown & Williamson,* 710 F.2d at 1180. The majority's analysis is curiously contradictory. On one hand, we are told that closure is needed to remove litigants from trial via settlement. On the other hand, we are informed that secrecy is needed to encourage timorous litigants to seek the

courts. In the hands of the majority, a sealing order is a marvelously versatile tool.

Of course, both concerns are chimeras. The notion that publicity-shy persons will refuse to settle merely because the papers cannot be sealed fails of its own weight; the timorous will hardly elect the only available alternative to settlement—proceeding to trial. As for the hypothetical litigant who is too frightened to ever bring his suit to court for fear of publicity's glare, the prospect that, *if* a settlement can be effected, the court *might* be persuaded to seal the record, could hardly be an inducement. The civil courts have never guaranteed secret justice to litigants; we turn back the clock in holding out any such hope.

However, even if one or both of these hypotheses were likely, the settlement interest remains an inadequate justification. Every right extended extracts a toll in judicial efficiency. Were we to enthrone expediency as a compelling interest, the underlying principle of judicial openness would inevitably be eroded. Historically, we have decided that the salutary effects of openness outweigh its price in efficiency. We should so hold today.

An interest worthy of much greater weight is the privacy interest of the litigants. Courts have consistently weighed privacy against access rights. *Warner,* 435 U.S. at 598, 98 S.Ct. at 1312; *Smith,* 776 F.2d at 1113; *In re Knoxville News Sentinel,* 723 F.2d 470, 477 (6th Cir.1983). The intrusion must be a serious one, exceeding mere embarrassment. *Mitchell,* 551 F.2d at 1263. In this case, the legitimate privacy interests, though entitled to some weight do not overcome the public right of access. We have before us two civil litigants. The law has not traditionally recognized the right of privacy as to facts disclosed by court proceedings. 420 U.S. at 493, 95 S.Ct. at 1045. The Supreme Court in *Cox Broadcasting* held that the press may not be held liable for truthfully reporting the contents of public records. 420 U.S. at 497, 98 S.Ct. at 1047.

Cases where privacy has been held to outweigh access are generally quite different from the case before us. Typical is *Knoxville News Sentinel,* 723 F.2d at 470. The court denied access to certain bank records that had been used as exhibits. The court upheld the privacy claims of the depositers, "who were not responsible for the initiation of the underlying litigation." 723 F.2d at 477. The court emphasized that the confidentiality of bank records is protected by law and that the privacy of third parties was involved. On the other hand, the parties before us seek to avoid disclosure of facts not traditionally protected by law. No third parties are implicated.

Even if the purported interests were viewed as compelling, the trial court's order is in no way "narrowly tailored." It has sealed the entire record, without stopping to distinguish those parts of the record that are innocent from those that might be argued as intrusive upon legitimate interests. Our law disapproves of such blanket approaches. In *Globe Newspapers,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248, the Supreme Court held unconstitutional a statute requiring mandatory closure of trials during the testimony of minor complainants in sex offense cases. Although the privacy interests underlying the statute are more substantial than those of the parties, the Court required a case-by-case determination. Likewise, in *Press Enterprise,* 104 S.Ct. at 819, the Court held that a trial court could not close voir dire proceedings despite the risk to privacy of jurors, innocent third parties who are actually compelled to appear and give testimony. Again, the interests of each juror must be separately balanced. 104 S.Ct. at 825. Serious consideration of the public's access rights demands that a compelling interest be shown with respect to each part of the record that is sealed. Such was not done in the case before us.

In summary, *Richmond Newspapers* and its progeny for the first time established a First Amendment right of access to judicial proceedings. The historical and functional approach applied in *Richmond* and its com-

panions must be applied in civil actions because there is no "criminal cases only" proviso in the First Amendment. Appellees have failed to bring forth a compelling state interest to overcome the right of access. Further, the order of the court below is not narrowly tailored to promote any interest that may exist. The records should be unsealed.